Reversed by Supreme Court, May 17, 2010

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Petitioner-Appellant,*

v.

GRAYDON EARL COMSTOCK, JR.,

*Respondent-Appellee.*

No. 07-7671

UNITED STATES OF AMERICA,

*Petitioner-Appellant,*

v.

SHANE CATRON,

*Respondent-Appellee.*

No. 07-7672

UNITED STATES OF AMERICA,

*Petitioner-Appellant,*

v.

THOMAS MATHERLY,

*Respondent-Appellee.*

No. 07-7673

UNITED STATES OF AMERICA,

       *Petitioner-Appellant,*

         v.                   No. 07-7674

MARVIN VIGIL,

       *Respondent-Appellee.*

UNITED STATES OF AMERICA,

       *Petitioner-Appellant,*

         v.                   No. 07-7675

MARKIS REVLAND,

       *Respondent-Appellee.*

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(5:06-hc-02195-BR; 5:06-hc-02202-BR; 5:06-hc-02205-BR;
5:06-hc-02206-BR; 5:06-hc-02212-BR)

Argued: September 23, 2008

Decided: January 8, 2009

Before MOTZ and AGEE, Circuit Judges,
and James C. CACHERIS, Senior United States District
Judge for the Eastern District of Virginia, sitting by
designation.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Agee and Senior Judge Cacheris joined.

**COUNSEL**

**ARGUED:** Mark Bernard Stern, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Jane Ely Pearce, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Jeffrey S. Bucholtz, Acting Assistant Attorney General, George E. B. Holding, United States Attorney, Jonathan F. Cohn, Deputy Assistant Attorney General, R. A. Renfer, Jr., Assistant United States Attorney, Samantha L. Chaifetz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Thomas P. McNamara, Federal Public Defender, Lauren Brennan, Research and Writing Attorney, Eric Brignac, Research and Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellees.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

This case presents the question of whether a newly-enacted federal statute—18 U.S.C. § 4248 (2006)—lies within Congress's power. Section 4248 purports to allow the federal government to place in indefinite civil commitment "sexually dangerous" persons, granting the federal government unprecedented authority over civil commitment—an area long controlled by the states. The district court held that § 4248 exceeds the limits of congressional power and intrudes on the powers reserved to the states. The Government now appeals.

We are the first appellate court to address this question, but the issue has divided trial courts across the nation. *Compare United States v. Tom*, 558 F. Supp. 2d 931, 938, 941 (D. Minn. 2008) (holding that Congress lacked authority to enact § 4248), *and United States v. Comstock*, 507 F. Supp. 2d 522,

540 (E.D.N.C. 2007) (same), *with United States v. Abregana*, 574 F. Supp. 2d 1123, 1133-34 (D. Haw. 2008) (holding that Congress had authority to enact § 4248), *United States v. Dowell*, No. CIV-06-1216-D, 2007 WL 5361304, at *7 (W.D. Okla. Dec. 5, 2007) (same), *United States v. Shields*, 522 F. Supp. 2d 317, 328 (D. Mass. 2007) (same), *and United States v. Carta*, 503 F. Supp. 2d 405, 407-08 (D. Mass. 2007) (same).

Two fundamental principles guide our inquiry. On one hand, respect for the legislative branch demands that we afford congressional enactments a "presumption of constitutionality." *United States v. Morrison*, 529 U.S. 598, 607 (2000). But on the other, we must invalidate an act of Congress on a "plain showing" that Congress has exceeded its constitutional authority. *Id.*

After carefully considering the Government's arguments, we conclude, for the reasons set forth below, that § 4248 does indeed lie beyond the scope of Congress's authority. The Constitution does not empower the federal government to confine a person solely because of asserted "sexual dangerousness" when the Government need not allege (let alone prove) that this "dangerousness" violates any federal law. We therefore affirm the judgment of the district court.[1]

I.

A.

Congress enacted § 4248 as part of the Adam Walsh Child Protection and Safety Act of 2006 ("the Act"). *See* Pub. L. No. 109-248, § 302, 120 Stat. 587, 620-22. With the aim of "protect[ing] children from sexual exploitation and violent

---

[1]Because we find § 4248 unconstitutional on this basis, we need not reach the other challenges to the statute and express no opinion on the district court's disposition of those issues.

crime," *id.* at 587, a Senate sponsor described the Act as "the most comprehensive child crimes and protection bill in our Nation's history." 152 Cong. Rec. S8012 (daily ed. July 20, 2006) (statement of Sen. Hatch). Among other measures, the Act creates a National Sex Offender Registry, *see* § 119, 120 Stat. at 596 (codified at 42 U.S.C. § 16919 (2006)), increases punishments for a variety of federal crimes against children, *see, e.g.*, § 206, 120 Stat. at 613 (codified as amended at 18 U.S.C. § 2241 (2006)), and strengthens existing child pornography prohibitions, *see, e.g.*, § 506, 120 Stat. at 630-31 (codified as amended at 18 U.S.C. § 1465 (2006)). None of these provisions of the Act is challenged here.

The only portion of the Act at issue here, § 4248, authorizes the federal government to civilly commit, in a federal facility, any "sexually dangerous" person "in the custody" of the Bureau of Prisons—even *after* that person has completed his entire prison sentence. 18 U.S.C. § 4248(a), (d) (2006). To initiate commitment under § 4248, the Attorney General need only certify that a person within federal custody is "sexually dangerous." Such a certification, when filed with the district court in the jurisdiction in which the federal government holds a person, automatically stays that person's release from prison. *Id.* § 4248(a). In the cases at issue here, this stay has extended federal confinement well past the end of any prison term. Thus, pursuant to § 4248, the federal government has civilly confined *former* federal prisoners without proof that they have committed any new offense. Moreover, § 4248 empowers the Attorney General to prolong federal detention in this manner without presenting evidence or making any preliminary showing; the statute only requires that the certification contain an allegation of dangerousness.

The statute defines a "sexually dangerous person" to be one who "has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others," and who suffers from a severe mental illness such that he would "have serious difficulty in refraining from sexu-

ally violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(5)-(6) (2006). However, neither "sexually violent conduct" nor "child molestation" are terms defined by the statute.[2]

After the Attorney General files the certification, § 4248 directs the district court to adjudicate a person's alleged sexual dangerousness. *Id.* § 4248(a). If the district court finds the person to be sexually dangerous by clear and convincing evidence, the court must commit the person to federal custody. *Id.* § 4248(d). *Only then* does § 4248 direct the Attorney General to make "all reasonable efforts" to transfer responsibility for the person to an appropriate *state* authority. *Id.* Unless and until a state assumes this responsibility, § 4248 authorizes federal confinement for as long as the person remains "sexually dangerous." *Id.*

## B.

Graydon Comstock, who filed the first of these consolidated challenges to § 4248, pled guilty to receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) (2006). Six days prior to the end of his 37-month prison sentence, the Attorney General certified Comstock as a sexually dangerous person, staying his release from prison. More than two years later, Comstock remains confined in the medium security Federal Correctional Institution at Butner, North Carolina ("FCI-Butner").

The cases of Markis Revland, Thomas Matherly, and Marvin Vigil followed a similar course, with the Government cer-

---

[2]In contrast to the undefined commitment criteria of § 4248, many state civil commitment statutes related to "sexually dangerous persons" are more narrowly drawn. For example, a proceeding for civil commitment of a "sexually violent predator" under Virginia law cannot be commenced unless the person "has been convicted of a sexually violent offense." Va. Code Ann. § 37.2-900 (2008). The statute specifically defines those offenses.

tifying each man for federal commitment less than one month before he completed his full prison term.[3] In fact, the Government certified Vigil for civil commitment on the very same day that he had completed his 96-month term of imprisonment. Like Comstock, each of these men remains in federal custody at FCI-Butner more than two years after the expiration of his prison term.

As part of each certification, the Government petitioned for a hearing to determine whether the named person qualified as "sexually dangerous" under § 4248. In each case, the named person then moved to dismiss, contending that § 4248 violates the Constitution. The district court agreed and held that § 4248's civil commitment scheme could not withstand constitutional scrutiny. *Comstock*, 507 F. Supp. 2d at 530-40.

With this background in mind, we turn to the question presented in this case: whether the Constitution grants Congress the authority to enact § 4248.

## II.

In the exercise of their general police and *parens patriae* powers, the states have long controlled the civil commitment of the mentally ill. *See, e.g.*, *United States v. Sahhar*, 56 F.3d 1026, 1029-30 (9th Cir. 1995); *United States v. Cohen*, 733 F.2d 128, 150 (D.C. Cir. 1984) (en banc) (MacKinnon, J.,

---

[3]The Attorney General has certified, under § 4248, more than 60 persons in the Eastern District of North Carolina alone, all of whom (as of this writing) remain in the federal prison complex in Butner, North Carolina. With one exception (Shane Catron, whose case we address in footnote 10), each of these persons had already served all, or almost all, of his prison term when the Attorney General certified him for this additional confinement. *See* Brief of Appellee at Appendix A; *see also United States v. Wilkinson*, No. 07-12061-MLW, 2008 WL 427295, at *1-3 (D. Mass. Feb. 14, 2008) (finding that all of the § 4248 cases filed in the District of Massachusetts involved certifications "just before the expiration of the [prisoner's] sentence" and urging the government to end this practice).

concurring) ("[The] care and commitment of the insane is, and has been, a uniquely *State* function."); Note, *Federal Hospitalization of Insane Defendants Under Section 4246 of the Criminal Code*, 64 Yale L.J. 1070, 1070 (1955) ("Power over the general field of insanity resides exclusively in the states as *parens patriae* . . . ."). Unlike the states, the federal government has no general police or *parens patriae* power. *United States v. Lopez*, 514 U.S. 549, 566 (1995).

Nonetheless, in the statute at issue here, Congress purports to grant the federal government broad civil commitment authority.[4] This raises a substantial constitutional question because the Constitution requires that a specific enumerated power support every statute enacted by Congress. *Morrison*, 529 U.S. at 607. The Government does not argue to the contrary.

Yet the Government attempts to defend the validity of § 4248 largely by direct reliance on the Necessary and Proper Clause. U.S. Const. art. I, § 8, cl. 18. But that provision, by itself, creates *no* constitutional power; rather, it merely permits Congress "[t]o make all Laws which shall be necessary and proper for carrying into Execution . . . all . . . Powers

---

[4]Section 4248 is not Congress's first attempt to assert federal power over civil commitment—but prior Attorneys General have concluded that the Constitution does not authorize such broad measures. In 1857, for example, Congress enacted a statute authorizing the hospitalization of incompetents charged with federal crimes. Act of Feb. 15, 1857, ch. 36, § 5, 11 Stat. 157, 158. But the Attorney General—adhering to precisely the same constitutional limits at issue in this case—concluded that the federal government could apply this statute *only* to persons within exclusive federal jurisdiction (e.g., residents of the District of Columbia and members of the military). 17 Op. Att'y Gen. 211 (1881). And, in 1874, Congress sought to provide, as § 4248 does, for the hospitalization of federal convicts found to be insane at the termination of their sentences. Act of June 23, 1874, ch. 465, § 2, 18 Stat. 251, 251-52. The Attorney General concluded that the federal government could not constitutionally detain a federal prisoner after the termination of his sentence, 30 Op. Att'y Gen. 569 (1916), and Congress codified this limitation in 1930. Act of May 13, 1930, ch. 254, § 6, 46 Stat. 270, 271.

*vested by this Constitution* in the Government of the United States . . . ." *Id.* (emphasis added). Thus, to sustain § 4248 under the Necessary and Proper Clause, the Government must show that the statute is necessary to achieve ends within Congress's *enumerated* powers. *See Sabri v. United States*, 541 U.S. 600, 605 (2004).

Perhaps implicitly recognizing this deficiency in its Necessary and Proper Clause arguments, the Government also relies (albeit briefly) on the Commerce Clause.[5] Unlike the Necessary and Proper Clause, the Commerce Clause does vest Congress with enumerated constitutional power. Clearly, if we can uphold § 4248 as a valid exercise of Congress' Commerce Clause powers, the statute lies within congressional authority. Accordingly, consistent with the "presumption of constitutionality," *Morrison*, 529 U.S. at 607, that we afford every federal statute, we begin our analysis by addressing this question.

A.

The Commerce Clause empowers Congress "[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3.

Recent Supreme Court precedent provides substantial assistance in resolving the question of whether the Commerce Clause authorizes § 4248. First, in *United States v. Lopez*, the Court held that the Gun-Free School Zones Act (GFSZA) of 1990, which made possession of a firearm in a school zone a federal crime, exceeded Congress's Commerce Clause power because it regulated neither commercial nor interstate activity.

---

[5]The Government barely mentions the Commerce Clause in its lengthy briefs. But when questioned at oral argument—after initially asserting that a "variety of [enumerated] powers" supported the challenged statute—the Government could indentify *only* the Commerce Clause as the specific enumerated constitutional power that authorized enactment of § 4248.

514 U.S. at 551. Then, in *Morrison*, the Court imposed further limits on Congress's Commerce Clause power, holding unconstitutional a provision of the Violence Against Women Act (VAWA) that created a federal civil remedy for noneconomic sexual violence, because such crimes do not substantially affect interstate commerce. 529 U.S. at 601-02, 614-18.

In these cases, the Court identified three specific areas that Congress could regulate pursuant to its Commerce Clause power: (1) the channels of interstate commerce, (2) instrumentalities of or persons and things in interstate commerce, and (3) activities that "substantially affect" interstate commerce. *See, e.g.*, *Lopez*, 514 U.S. at 558-59. Like the statutes at issue in *Lopez* and *Morrison*, the statute challenged here, § 4248, contains no jurisdictional requirement limiting its application to commercial or interstate activities. Nor does the Government suggest that § 4248 targets the channels of interstate commerce or persons and things in interstate commerce. Therefore, we can uphold § 4248 under the Commerce Clause only if it regulates activities that "substantially affect" interstate commerce. *See Morrison*, 529 U.S. at 609.

*Morrison* forecloses any such argument. Indeed, § 4248 bears striking similarities to the VAWA provision struck down in *Morrison*. First, like VAWA, § 4248 provides a civil remedy aimed at the prevention of noneconomic sexual violence. The *Morrison* Court's rationale for rejecting Commerce Clause authority for such a statute applies with equal force here:

> The regulation and punishment of intrastate violence . . . has always been the province of the States. Indeed, we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.

*Id.* at 618-19 (citations omitted).

Second, the target of the statute challenged here (sexual dangerousness)—no less than the target of the statute invalidated in *Morrison* (gender-motivated violence)—is "not, in any sense of the phrase, economic activity." *Id.* at 613. Like the gender-motivated violence banned in *Morrison*, sexual dangerousness does not substantially affect interstate commerce. Indeed, unlike *Morrison*, the record here does not even contain any legislative findings to the contrary.

Supreme Court precedent thus compels the conclusion that § 4248 does not constitute a valid exercise by Congress of its Commerce Clause power.[6] To construe § 4248 as within such power would encroach on the police and *parens patriae* powers reserved to the sovereign states, conflating "what is truly national and what is truly local." *Id.* at 617-18; *see also Cohen*, 733 F.2d at 138 (Scalia, J.) ("'[A] Federal procedure for the commitment of the [mentally ill] would constitute an inappropriate interference with the balance of Federal and State powers. . . . [T]he care of the mentally ill is a task that uniquely belongs within the *parens patriae* powers of the States.'" (*quoting* H.R. Rep. No. 96-1396, at 561 (1980))).

Federal commitment of "sexually dangerous persons" may well be—like the suppression of guns in schools or the redress

---

[6]As the Government acknowledges, nothing in the Supreme Court's most recent Commerce Clause opinion, *Gonzales v. Raich*, 545 U.S. 1 (2005), alters the core holding in *Morrison* that Congress lacks authority to regulate noneconomic sexual violence. The *Raich* Court sustained the drug prohibitions of the Controlled Substances Act (CSA) as applied to the intrastate cultivation and use of medical marijuana. *Id.* at 13, 32-33. Relying on the rationale of *Wickard v. Filburn*, 317 U.S. 111 (1942), the Court reasoned that Congress could regulate this purely local activity as part of regulating "an economic class of activities that have a substantial effect on interstate commerce." *Raich*, 545 U.S. at 17 (internal quotations omitted). In contrast to the CSA, § 4248 constitutes no part of a "comprehensive" legislative scheme that targets interstate markets. *Id.* at 22.

of gender-motivated violence—a sound proposal as a matter of social policy. But policy justifications do not create congressional authority. *Morrison*, 529 U.S. at 627. Hence § 4248 lies beyond Congress's Commerce Clause authority. The Government's apparent reluctance to rely on the Commerce Clause is thus understandable.

## B.

What is less understandable is the Government's heavy reliance on the Necessary and Proper Clause, standing alone, as a source of congressional power. Of course, as the Government contends at length, the Necessary and Proper Clause reaches broadly, but it does so only to effectuate powers specifically enumerated in the Constitution. *See McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 414-21 (1819). The Necessary and Proper Clause simply does not—in and of itself—*create* any Congressional power. *See Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 247 (1960) ("The [Necessary and Proper Clause] is not itself a grant of power, but a *caveat* that the Congress possesses all the means necessary to carry out the specifically granted 'foregoing' powers of § 8 [of Article I of the Constitution.]"). Ordinarily, this would end our discussion of the Necessary and Proper Clause. But because the Government's defense of § 4248 relies almost exclusively on that Clause, we briefly address each of its specific arguments on this point.

## 1.

The Government's principal argument is that its ability to establish and maintain a "federal criminal justice and penal system" somehow renders § 4248 necessary and proper and thus constitutional. *See* Brief of Appellant at 14, 20, 21, 30, 32, 34, 42; Reply Brief of Appellant at 2, 6, 7, 10, 16. The Government cites *no* precedent in support of this novel theory. Instead, the Government relies on a restatement provision setting forth common law principles on the responsibilities of

custodians. *See* Brief of Appellant at 30 (*quoting* Restatement (Second) of Torts § 319 (1965)); Reply Brief of Appellant at 11-12 (same). In essence, the Government argues that because it may constitutionally imprison persons who violate federal criminal law, it can continue to confine such persons—even after they have served their sentences—if it believes them to be "sexually dangerous."

This argument must fail. Of course, Congress may establish and run a federal penal system, as necessary and proper to the Article I power (usually the Commerce Clause) relied on to enact federal criminal statutes. And, consistent with its role in maintaining a penal system, the federal government possesses broad powers over persons *during* their prison sentences. But these powers are far removed from the indefinite civil commitment of persons *after* the expiration of their prison terms, based solely on possible future actions that the federal government lacks power to regulate directly.[7]

The fact of previously lawful federal custody simply does not, in itself, provide Congress with any authority to regulate future conduct that occurs outside of the prison walls. For example, although the Government may regulate assaults

---

[7]We further note that the expansive view of "custody" that the Government itself has urged in other § 4248 cases belies its contention that § 4248 constitutes a limited, necessary extension of the federal penal system. For example, in *United States v. Shields*, the Government maintained that § 4248 requires only that a person is "in custody" of the Bureau of Prisons, not that this custody is lawful. *See* Government's Mem. in Opp'n to Mot. to Dismiss at 1-3, United States v. Shields, No. 07-12056 (D. Mass. Nov. 13, 2007). Similarly, in a case currently on appeal before the Seventh Circuit, the Government argues that § 4248 validly applies to persons whom the federal government has never convicted of a crime—a rationale that would extend § 4248's reach to material witnesses, civil contempt detainees, and individuals in immigration detention. *See United States v. Hernandez-Arenado*, No. 08-278, 2008 WL 2373747, at *3-5 (S.D. Ill. June 9, 2008). These arguments starkly conflict with the Government's attempt here to justify § 4248 as a narrow exercise of federal *penal* power.

occurring in federal prisons, the Government cannot criminal-
ize all assaults committed by *former* federal prisoners. As the
district court explained:

> The fact of legitimate custody . . . does not establish
> Congressional authority to provide for the commit-
> ment of a person *after* a person has completed a sen-
> tence for a federal crime, i.e., when the power to
> prosecute federal offenses is exhausted, when that
> person has not committed any misconduct while in
> custody, and where there has been no showing that
> the person is likely to engage in conduct that Con-
> gress, as opposed to the states, actually has the
> authority to criminalize.

*Comstock*, 507 F. Supp. 2d at 551.

2.

The Government next contends that § 4248 constitutes a
necessary and proper exercise of its power to prevent "sex-
related crimes." Brief of Appellant at 36. But the federal gov-
ernment simply has no power to broadly regulate *all* sex-
related crimes, as § 4248 purports to do.

Consistent with Congress's limited powers, federal statutes
regulating sex crimes are limited in number and breadth, spe-
cifically requiring a connection to interstate commerce, *see,
e.g.*, 18 U.S.C. § 2252(a)(2) (2006), or limiting their scope to
the territorial jurisdiction of the United States, *see, e.g.*, *id.*
§ 2243(a). In contrast, § 4248 targets "sexual dangerousness"
generally, without any requirement that this undefined danger
relate to conduct that the federal government may constitu-
tionally regulate. Because most crimes of sexual violence vio-
late state and not federal law,[8] many commitments under

---

[8]Even a cursory review of federal and state prison statistics demon-
strates this fact. In 2004, states had in their custody approximately 153,800

§ 4248 would prevent conduct prohibited *only* by *state law*. Section 4248 thus sweeps far too broadly to be a valid effort to prevent *federal* criminal activity.

The principal case on which the Government relies for its argument to the contrary, *United States v. Perry*, 788 F.2d 100 (3d Cir. 1986), actually offers it no support. Notably, at the outset, the *Perry* court recognized (as the Government fails to here) that a specific, enumerated federal power must support a federal civil commitment:

> [T]he federal government may resort to civil commitment when such commitment is necessary and proper to the exercise of some specific federal authority. *Congress may not, however, authorize commitment simply to protect the general welfare of the community at large*.

*Id.* at 110 (emphasis added). Applying this test, *Perry* upheld the constitutionality of the Bail Reform Act of 1984, which authorizes *pretrial* detention only if a court finds a likelihood that the detainee will, if released, commit one of *four specific federal offenses*. *Id.* at 111. The Bail Reform Act therefore contained a clear connection between the *pretrial* detentions and the Government's interest in preventing federal crime.[9]

---

prisoners convicted of rape or other sexual assault. *See* William J. Sabol et al., U.S. Dep't of Justice, *Prisoners in 2006*, at 24 app. tbl.9 (2007), *available at* http://www.ojp.gov/bjs/pub/pdf/p06.pdf. This number is approximately equal to the total number of persons in federal prison for any crime. *See id.* at 2 tbl.1 (indicating approximately 188,000 total federal inmates in 2005). Those convicted of sexual crimes constitute a very small percentage of the federal total. *See* Bureau of Justice Statistics, U.S. Dep't of Justice, *Compendium of Federal Justice Statistics, 2003*, at 62 tbl.4.2 (2005), *available at* http://www.ojp.usdoj.gov/bjs/pub/pdf/cfjs03.pdf (indicating that federal convictions for violent sexual offenses, "obscene material," and "non-violent sex offenses," together, constituted less than 2% of all federal convictions).

[9]*United States v. Plotts*, 347 F.3d 873 (10th Cir. 2003), offers the Government even less support. *Plotts* held a statute requiring that individuals

In contrast, § 4248 contains no such connection: it does not refer to any federal crime, let alone require the Government to demonstrate that a person presents a risk of committing a specific federal crime. Indeed, under § 4248, the federal government may commit a person even though he has never been convicted by any court—state or federal—of any crime of sexual violence. Section 4248 only requires that the Government demonstrate that an individual in United States custody is "sexually dangerous," which encompasses *any* "sexually violent conduct"—regardless of whether state or federal law criminalizes this conduct. *See* 18 U.S.C. § 4247(a)(6) (2006).

At its core, the Government's argument attempts to "pile inference upon inference" so as to "convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Lopez*, 514 U.S. at 567. Were we to accept the Government's logic, Congress could authorize the civil commitment of a person on a showing that he posed a general risk of *any* sexually violent conduct, even though not all, or even most, of this potential conduct violated federal law. This argument would convert the federal government's limited power to criminalize narrow forms of sexual violence into the general power to regulate all sexual violence, including acts which violate no criminal statute. Congressional power does not reach so far.

3.

Finally, the Government maintains that the Necessary and Proper Clause justifies § 4248 because it retains the "power to prosecute" all persons in its custody charged with criminal

---

convicted of federal crimes provide DNA samples was constitutional under Congress's power to "fashion *penalties* for the violation of valid *federal laws*," or because of its power "to aid the Executive in prosecuting those who . . . *violate federal criminal laws*." *Id.* at 879 (emphasis added). Neither of these rationales supports § 4248, because commitment under § 4248 constitutes no part of a person's "penalt[y]" or "prosecut[ion]" for the violation of "federal criminal laws."

offenses. But the Government has already charged, tried, and convicted Comstock, Matherly, Vigil, and Revland of all alleged federal crimes; it retains no power to prosecute them.

*Greenwood v. United States*, 350 U.S. 366 (1956), on which the Government heavily relies, does not suggest, let alone hold, to the contrary. Rather, *Greenwood* simply upholds a statute that permits the federal civil commitment of a person charged with federal crimes *but found incompetent to stand trial. Id.* at 367-68, 375. To prevent "frustrat[ion]" of federal prosecutions in such cases, *Greenwood* authorizes the commitment of these incompetent individuals, reasoning that they might someday regain competence and so be able to stand trial. *Id.* at 375 ("The power that put [the accused] into [federal] custody—the power to prosecute for federal offenses —is not exhausted.").[10] Furthermore, the statute upheld in *Greenwood* requires the Attorney General to determine that "suitable arrangements for *State* custody and care of the per-

---

[10]For example, a federal judge found Shane Catron—the fifth person who challenges § 4248 here—incompetent to stand trial before the Government could prosecute him for his alleged criminal offenses. This frustrated the Government's power to prosecute Catron. Thus, as Catron concedes, § 4246 (the statute at issue in *Greenwood*) empowers the Government to certify and detain him in a federal facility until he regains competence. Had the Government held to its original course of committing Catron pursuant to § 4246, its actions would lie within its constitutional authority. But, for unexplained reasons, the Government chose to withdraw its § 4246 certification of Catron and instead certified him pursuant to § 4248. The seemingly unique circumstances of Catron's case differ greatly from those applicable to the four other appellees in this case, and to all of the more than 60 other individuals committed under § 4248 in this circuit. Because no party asks us to bifurcate Catron's unique challenge to § 4248, we decline to do so. As the Supreme Court has noted, when the parties do not ask for such "finely drawn" relief, we need not embark on such a course. *See Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 330-31 (2006). We note that § 4246 also purports to allow the federal government to confine indefinitely persons in federal custody whose sentences have expired. But that provision was neither at issue nor addressed by the Supreme Court in *Greenwood*; similarly, it is not at issue here and we too decline to address it.

son are *not* available" *before* the federal government can undertake any commitment. 18 U.S.C. § 4246(a) (2006) (emphasis added).

In sum, *Greenwood* only approved the federal civil commitment of persons who had been charged with federal crimes but found incompetent to stand trial, and for whom no state would take custody. *Greenwood* certainly did not approve the federal civil commitment of persons—like Comstock, Matherly, Vigil, and Revland—who have stood trial, been convicted, and fully served all federal prison sentences.[11] Accordingly, because no federal prosecution has been frustrated here, we cannot sustain § 4248 under *Greenwood*.

### III.

For these reasons, we can only conclude that the district court correctly held § 4248 unconstitutional. The challengers have made a "plain showing" that, in enacting § 4248, Congress exceeded its constitutional authority. *Morrison*, 529 U.S. at 607.

Our holding, however, does not require that the Government's legitimate policy concerns go unaddressed. If the federal government has serious concerns about the dangerousness of a person due to be released from federal prison, it can notify state authorities, who may use their well-settled police and *parens patriae* powers to pursue civil commitment under state law. *See generally Kansas v. Hendricks*, 521 U.S. 346 (1997).

---

[11]Although the Government notes in passing that Comstock, Matherly, Vigil, and Revland remain subject to supervised release, it does not allege that they have violated the terms of supervised release or any other federal law. Of course, the Government has no unexhausted power to prosecute a *former* federal prisoner simply because he *could* violate a term of his supervised release; any person *could* violate federal law.

Moreover, if the relevant state authorities prove reluctant to take charge of such persons, the Government is not without recourse. The federal government may, for example, wield its spending power to encourage state action, *see* U.S. Const. art. I, § 8, cl. 1 (granting Congress the power to allocate funds to promote the "general Welfare"), by providing funding to state institutions for this purpose. *Cf. South Dakota v. Dole*, 483 U.S. 203, 209-12 (1987). But Congress's perceived need for the sort of civil commitment statute at issue here does not create constitutional power where none exists. *See Morrison*, 529 U.S. at 627. Congress must instead seek alternative, constitutional means of achieving what may well be commendable objectives.

The power claimed by § 4248—forcible, indefinite civil commitment—is among the most severe wielded by any government. The Framers, distrustful of such authority, reposed such broad powers in the states, limiting the national government to specific and enumerated powers. "[T]hat those limits may not be mistaken, or forgotten, the constitution is written." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176 (1803). Section 4248 thus cannot be sustained as an exercise of Congress's authority under the Commerce Clause or any other provision of the Constitution. For these reasons, we affirm the judgment of the district court.

*AFFIRMED*